UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
**ANGELA MUNOZ**,                                             :
                                                              :
              Plaintiff,        :
                                                              :  **MEMORANDUM DECISION AND**
      – against –                                     :  **ORDER**
                                                              :
                                                              :  20-CV-3725 (AMD)
**ANDREW M. SAUL**,                                           :
                                                              :
              Defendant.       :
                                                              :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      The plaintiff challenges the Social Security Commissioner's decision that she was not disabled for the purpose of receiving benefits under Title II of the Social Security Act. For the reasons explained below, I grant the plaintiff's motion for judgment on the pleadings, deny the Commissioner's cross-motion and remand the case for further proceedings.

## BACKGROUND

      On February 16, 2017, the plaintiff applied for disability insurance benefits, alleging disability beginning July 16, 2016, caused by multiple sclerosis ("MS"), migraine headaches, depression and anxiety.[1] (Tr. 196-97, 218.) The Social Security Administration ("SSA") denied her claim after initial review on August 19, 2017. (Tr. 103-07.) The plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on September 13, 2017. (Tr. 115-16.) ALJ Michael D. Mance held a hearing on February 6, 2019, at which a vocational expert and the plaintiff—who was represented by counsel—testified. (Tr. 41-60.)

---

[1] The plaintiff previously filed for disability benefits on March 10, 2014; an ALJ denied her claim on July 15, 2016 (Tr. 61-76), and the Appeals Council denied her application for review on February 1, 2017. (Tr. 81-88.)

In a March 21, 2019 decision, the ALJ denied the plaintiff's claim for benefits. (Tr. 15-26.) After determining that the plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 16, 2016, ALJ Mance found that the plaintiff had the following severe impairments: MS, migraine headaches and major depressive disorder/mood disorder. (Tr. 17-18.) He then determined that none of these severe impairments met or equaled the severity of one of the listed impairments in the applicable Social Security regulations. (Tr. 18-19.) The ALJ concluded that the plaintiff had the residual functional capacity ("RFC") to perform sedentary work, and "could lift and carry 10 pounds occasionally," "stand and/or walk 2 hours in an 8-hour workday and sit up to 6 hours in an 8-hour workday." (Tr. 19.) The ALJ also determined that the plaintiff "could not climb ladders, ropes, scaffolds, ramps, or stairs;" "could occasionally balance and stoop, but never kneel, crouch, or crawl;" "was limited to frequent, not constant, pushing and pulling with her upper or lower extremities;" "was also limited to frequent, not constant, handling and fingering;" "should [avoid] concentrated exposure to unprotected heights, extreme heat, humidity, excessive vibrations and hazardous machinery;" and "was limited to jobs that did not require speaking English as part of the job." (*Id*.)

The ALJ found that the plaintiff "could perform unskilled, non-detailed, routine, repetitive tasks," and "could adapt to routine, simple work changes and make simple work related decisions," but "was limited to no more than occasional contact with the public and coworkers." (Tr. 19-20.) Finally, the ALJ concluded that although the plaintiff could not perform her past relevant work as a child monitor or beauty supply clerk, there were jobs in the national economy including "addressing clerk," "document preparer" and "final assembler" that she could perform. (Tr. 24-26.) The Appeals Council denied the plaintiff's application for review on June 12, 2020. (Tr. 1-8.)

**STANDARD OF REVIEW**

A district court reviewing a final decision of the Commissioner must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). The court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them. 42 U.S.C. § 405(g). "[S]ubstantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

"Although factual findings by the Commissioner are 'binding' when 'supported by substantial evidence,' '[w]here an error of law has been made that might have affected the disposition of the case,'" the court will not defer to the ALJ's determination. *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). Moreover, the district court should remand if "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004) (citations omitted).

**DISCUSSION**

The plaintiff challenges the ALJ's RFC determination on the ground that the ALJ improperly discounted the opinion of her treating physician, Dr. Jai Perumal. (ECF No. 12 at 16-21.) The plaintiff maintains that had the ALJ given the appropriate weight to Dr. Perumal's

opinion, he would have found that the plaintiff was unable to perform sedentary work.[2] (*Id.* at 18.) As explained below, I agree that remand is appropriate so that the ALJ can re-evaluate the weight to assign to Dr. Perumal's opinion.

Under the "treating physician rule,"[3] an ALJ must give a treating physician's opinion "controlling weight" if it is "well-supported by medically acceptable clinical laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ first decides whether the doctor's opinion is entitled to controlling weight. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "[I]f the ALJ decides the opinion is not entitled to controlling weight, [he] must determine how much weight, if any, to give it." *Id*. When the ALJ does not give a treating physician's opinion controlling weight, "[he] must explicitly consider the following, nonexclusive *Burgess* factors: (1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* at 95-96 (quoting *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014)) (quotation marks omitted); *see also Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight . . . is a procedural error." *Estrella*, 925 F.3d at 96.

---

[2] Under Social Security regulations, sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

[3] I apply the treating physician rule, which applies to claims filed before March 27, 2017. 20 C.F.R. § 404.1527. Although the plaintiff's application is dated May 10, 2017 (Tr. 196), the ALJ, the plaintiff and the Commissioner said that she applied for benefits on February 16, 2017, before the regulations were amended. (Tr. 15; ECF No. 12 at 4; ECF No. 15-1 at 17 n.4.) Neither party disputes the applicability of the treating physician regulations. (*Id.*)

If the ALJ does not consider the *Burgess* factors explicitly, the case must be remanded, "unless a searching review of the record shows that the ALJ has provided 'good reasons' for [his] weight assessment." *Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019). If the ALJ does not give "good reasons" for the weight he assigns to a treating physician's opinion, the case must be remanded. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also Fontanez v. Colvin*, No. 16-CV-1300, 2017 WL 4334127, at *18 (E.D.N.Y. Sept. 28, 2017) (the ALJ's "failure to provide 'good reasons' for not crediting a treating source's opinion is ground for remand." (citations omitted)).

The plaintiff was diagnosed with MS in 2008, and first saw Dr. Perumal, a neurologist, in August of 2014. (Tr. 290.) Dr. Perumal's examination at the first appointment showed that the plaintiff's "[g]ait was slightly wide based and ataxic," that she had "mild dysmetria" on the right side, decreased light touch sensation on the right side, and strength of 4+ on the right side and 5 on the left side, and that she had a "cognitive impairment." (Tr. 291.) An MRI of the plaintiff's brain showed multifocal white matter disease that was consistent with her MS diagnosis. (Tr. 293-94.) Dr. Perumal initially recommended medications "[g]iven the nature of her MS and the deficits she already ha[d]" and to mitigate "ongoing symptoms." (*Id.*)

Dr. Perumal oversaw the plaintiff's treatment for the next four years. In his evaluation, he regularly noted the plaintiff's ataxia, dysmetria, reduced strength on the right side and reduced sensation to touch on the right side. (Tr. 304, 309, 312, 317, 323, 329, 334-35, 337, 475, 481, 488.) During this period, the plaintiff reported muscle spasms (Tr. 311, 487), migraine headaches (Tr. 322, 333), and "worsening" dizziness, imbalance, numbness, fatigue and pain on at least one occasion in December of 2015. (Tr. 328.) She also told Dr. Perumal that she was seeing a psychiatrist for depression. (Tr. 333, 487.) Dr. Perumal took multiple MRIs of the

plaintiff's brain, which did not show significant change in her multifocal white matter disease. (Tr. 294-95, 324-25, 482-83, 489-90.) For example, the results of a September 2018 MRI showed that her "multifocal T2 hyperintense lesions" were consistent with her history of MS, but that there were "no new lesion[s] compared with the prior study." (Tr. 489.) Over the course of the doctor's relationship with the plaintiff, he prescribed various medications for her MS, including Gilenya, Ampyra and baclofen, and also referred her to a pain management physician. (Tr. 335.)

Dr. Perumal completed a questionnaire about the plaintiff on January 9, 2019, in which he noted that he had been treating her for MS every three to six months since 2014. (Tr. 469.) Dr. Perumal reported that the plaintiff's symptoms included fatigue, balance problems, poor coordination, weakness, unstable walking, sensory disturbance, pain, difficulty remembering, depression, difficulty solving problems and sensitivity to heat. (*Id.*) He opined that she could stand ten to fifteen minutes at a time before needing to sit or walk around, and that she could neither sit nor stand and walk for more than two hours in an eight-hour workday. (Tr. 470.) He also stated that she could not lift ten pounds or less while working; could not stoop, crouch, climb ladders or stairs; and had significant limitations in her ability to reach, grasp and finger with her right hand. (Tr. 471.) He concluded that she would need to be absent from work more than four days each month. (Tr. 472.)

The ALJ assigned "limited weight" to Dr. Perumal's opinion, explaining that it was contradicted by aspects of the plaintiff's testimony and by other evidence. (Tr. 22.) Although the ALJ acknowledged the plaintiff's "treating source relationship" with Dr. Perumal (*id.*), he did not determine, as he was required to do, whether Dr. Perumal's opinion merited controlling

weight.  *See* 20 C.F.R. § 416.927(c)(2).  The ALJ did not refer to the controlling weight presumption, or explain why he did not give Dr. Perumal's opinion controlling weight.

Nor did the ALJ address the first, second and fourth *Burgess* factors in his determination.  He did not mention the frequency, length, nature and extent of the treatment relationship, the extent to which medical evidence supported the doctor's opinion or whether the doctor was a specialist.  (Tr. 20-21, 22); *Estrella*, 925 F.3d at 96 (highlighting the ALJ's failure to consider physician's treatment of the plaintiff over approximately five years).  This is a "procedural error" that merits remand.

In assigning Dr. Perumal's conclusions "limited weight," the ALJ cited what he described as inconsistencies between the doctor's opinion and the plaintiff's testimony, as well as other evidence.  (Tr. 22.)  For example, the ALJ noted that Dr. Perumal's opinion about the weight the plaintiff could lift in a work setting was not consistent with the plaintiff's testimony about her daily activities.  (Tr. 22, 49-51.)  In addition, he cited an inconsistency between Dr. Perumal's findings and those of Dr. Iqbal Teli, a one-time consultative examiner.  (Tr. 22, 359-60.)  Finally, the ALJ explained that other aspects of Dr. Perumal's findings—that the plaintiff would need to miss approximately four days of work each month, could not tolerate exposure to certain environments, could never stoop, crouch or climb stairs and could not sit for more than two hours in a workday—were inconsistent with the "minimal clinical signs and findings, the stable objective diagnostic testing and her ability to travel to Ecuador."  (Tr. 22.)

The Commissioner argues that these are "good reasons for giving limited weight to Dr. Perumal's very restrictive opinion."  (ECF No. 15-1 at 19-20.)  I disagree.  Contradictory evidence must be "overwhelmingly compelling in order to overcome a medical opinion."  *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Wagner v. Sec'y of Health and Human*

*Servs.*, 906 F.2d 856, 862 (2d Cir. 1990)).  As I explain below, the "inconsistencies" that the ALJ described are either unsupported by the record, or insufficient to qualify as "good reasons" for discounting the treating physician's opinion.  *See Apfel*, 177 F.3d at 133.

The ALJ's finding that Dr. Perumal's opinion was inconsistent with the plaintiff's testimony about her daily activities is based on a misreading of the plaintiff's testimony.  In the ALJ's view, "[the plaintiff] testified she could lift a gallon of milk and perform basic tasks such as shopping and fixing something to eat," which he thought contradicted Dr. Perumal's conclusion that she "could never lift any weight."  (Tr. 22.)  The plaintiff did testify that she could lift a gallon of milk, but that it was painful.  (Tr. 51; *see also* Tr. 50 ("The thing is I can lift something, but I get pain, a lot of pain when I lift things, a lot of pain in my shoulders.").)  And, although she went shopping, her mother drove her to the store.  (Tr. 49-50.)  She also made clear that she was limited in her ability to do other daily tasks, explaining, for example, that she "take[s] [her] time" washing dishes.  (Tr. 49.)

The plaintiff's testimony that lifting was painful and that it was hard for her to handle daily chores supports rather than undermines Dr. Perumal's conclusions.  Remand is warranted. *See Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 433, 436 (S.D.N.Y. 2010) (remanding where ALJ's findings rested in part on misstatement of the claimant's testimony); *Scognamiglio v. Saul*, 432 F. Supp. 3d 239, 252 (E.D.N.Y. 2020) (finding error when ALJ "mischaracterize[ed] Plaintiff's testimony about her pain," and "chose to disregard [her] statements in favor of a handful of anecdotes that would seem to indicate Plaintiff's normal functionality").

Moreover, even if the plaintiff could tend to her day-to-day needs, nothing in the record suggests that she could do anything "for sustained periods comparable to those required to hold a

sedentary job." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983)).[4]

The ALJ also cited Dr. Teli's findings as an additional reason to assign less weight to Dr. Perumal's opinion. (Tr. 22, 359-60.) Dr. Perumal noted that the plaintiff was significantly limited in her ability to reach, grasp and finger with her right hand. (Tr. 471.) Dr. Teli observed—in a one-time consultative examination in June of 2017—that her "hand and finger dexterity" were "intact," and her "[g]rip strength" was "5/5 bilaterally." (Tr. 359-60.)

The ALJ's reliance on the consultative examination rather than the treating physician's conclusions was error. *See Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) ("ALJs should not rely heavily on the findings of consultative physicians after a single examination."); *Bullock v. Colvin*, No. 17-CV-5657, 2019 WL 967341, at *3 (S.D.N.Y. Feb. 28, 2019) ("A consulting physician's opinions or report are typically given limited weight because 'consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day.'" (quoting *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990))). This is especially true since the ALJ also found that Dr. Teli's opinion deserved "limited weight." (Tr. 22.) "[I]t was plainly erroneous for the ALJ to accord "'[limited] weight' to the opinion[] of [Dr. Perumal] based on a comparison to [Dr. Teli's]

---

[4] Courts routinely hold that a plaintiff's ability to handle daily activities is not a sufficient basis for rejecting a treating physician's opinion. *See Cabibi v. Colvin*, 50 F. Supp. 3d 213, 238 (E.D.N.Y. 2014) ("Indeed, it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, 'as people should not be penalized for enduring the pain of their disability in order to care for themselves.'" (quoting *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000))); *Nusraty v. Colvin*, 213 F. Supp. 3d 425, 440 (E.D.N.Y. 2016) ("Because 'a claimant need not be an invalid to be found disabled,' Plaintiff's reports of her daily activities by themselves are not substantial evidence that she was not disabled and are insufficient to justify according [the treating physician's] opinion limited weight." (quoting *Balsamo*, 142 F.3d at 81)); *id.* ("[W]hen a disabled person gamely chooses to endure pain in order to pursue important goals . . . it would be a shame to hold this endurance against him." (alterations in original) (quoting *Balsamo*, 142 F.3d at 81)).

findings, to which even the ALJ ultimately gave 'little weight.'" *Scognamiglio*, 432 F. Supp. 3d at 249.

The ALJ further explained that Dr. Perumal's opinion deserved limited weight because some of his findings—that the plaintiff would miss four days of work each month, could not tolerate exposure to certain environmental conditions, could not stoop, crouch or climb stairs and could not sit for more than two hours in an eight-hour workday—were "inconsistent with the minimal clinical signs and findings, the stable objective diagnostic testing and her ability to travel to Ecuador." (Tr. 22.) As explained below, these are not sufficient reasons to discount the treating physician's opinion.

In concluding that the plaintiff had "minimal clinical signs and findings," the ALJ appears to have relied on his own observations rather than a doctor's judgment. (Tr. 21-22.) The ALJ made the same observation—that the plaintiff had "minimal clinical signs and findings"—when he discounted the findings of another physician, Dr. Lalendra Sinha, who wrote in a May 2016 medical source statement that the plaintiff could not sit or stand and walk for more than an hour in an eight-hour workday because of her MS; that she had to lie down for about three hours in a workday; that she could "rarely" keep her balance when she walked; that she could lift up to ten pounds occasionally; and could only use her hands and arms occasionally. (Tr. 22, 373-75.) To the extent that the ALJ also relied on Dr. Teli's findings to conclude that the plaintiff had "minimal clinical signs and findings," he again gave undue weight to a one-time consultative examiner's opinion at the expense of other physicians' opinions. *See Selian*, 708 F.3d at 419.

Nor did the ALJ explain his view that Dr. Teli concluded that the plaintiff had "minimal clinical signs and findings." (Tr. 21-22.) Although Dr. Teli observed that the plaintiff's hand and finger dexterity was intact and her grip strength was "5/5 bilaterally," he also noted that she

"[c]ould not walk on heels and toes," and that she had "[p]ain and touch sensation are decreased in the right hand and right leg" (Tr. 359-60), which were the findings that led the ALJ to give Dr. Teli's opinion "limited weight." (Tr. 22.)  It is thus not clear how the ALJ concluded that the plaintiff had "minimal clinical signs and findings;" because there are no medical opinions to support his decision, it appears that the ALJ substituted his opinion for medical evidence.  "In the absence of a medical opinion to support the ALJ's finding . . . it is well-settled that the ALJ cannot arbitrarily substitute [his] own judgment for competent medical opinion . . . ." *Balsamo*, 142 F.3d at 81 (quotation marks and citation omitted); *see also Filocomo v. Chater*, 944 F. Supp. 165, 170 (E.D.N.Y. 1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in [his] own evaluations of the medical findings.").

The ALJ also relied on his own opinion in finding an inconsistency between Dr. Perumal's findings and the "stable objective diagnostic testing." (Tr. 21-22.)  While the MRIs showed no changes in the plaintiff's white matter between 2014 and 2018 (Tr. 22, 294-95, 324-25, 482-83, 489-90; ECF No. 15-1 at 21), the ALJ did not explain why the absence of any changes meant that Dr. Perumal was wrong in his conclusions about the plaintiff's ability to sit, stoop, crouch, or climb stairs, or tolerate exposure to certain environments.  It was error for the ALJ to make that conclusion without medical support in the record.  Moreover, "[i]t is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination." *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004); *Pacheco v. Barnhart*, No. 03-CV-3235, 2004 WL 1345030, at *4 (E.D.N.Y. June 14, 2004) ("[A]n ALJ cannot 'pick and choose evidence in the record that supports [his] conclusions.'" (citations omitted)).

Finally, the ALJ cited the fact that the plaintiff went to Ecuador as another reason to discount Dr. Perumal's opinion. (Tr. 21-22.) An annotation in the plaintiff's June 2016 record reflects that "she flew back from Ecuador th[at] morning." (Tr. 345.) In her motion, the plaintiff maintains that she traveled to Ecuador to visit her husband. (ECF No. 12 at 20.) The ALJ did not explain why the fact that she took this trip meant that Dr. Perumal was wrong about the plaintiff's ability to sit, stoop, crouch, or climb stairs, or tolerate exposure to certain environments. As explained above, evidence that the plaintiff "'gamely chooses to endure pain in order to pursue important goals,' such as attending church and . . . shopping for [her] family" is not evidence that the plaintiff "is capable of working." *Balsamo*, 142 F.3d at 81-82 (quoting *Nelson*, 882 F.2d at 49).

If he thought there were discrepancies between Dr. Perumal's opinion and other evidence or testimony, the ALJ should have sought clarification. *See McGill v. Saul*, No. 18-CV-6430, 2020 WL 729774, at *4 (E.D.N.Y. Feb. 13, 2020) ("[S]ince the ALJ deemed the treating physicians' opinions lacking in support, the ALJ should have sought clarification from them regarding the deficiencies she perceived in their opinions."). On remand, the ALJ should reconsider the appropriate weight to give Dr. Perumal's opinion, and apply the *Burgess* factors.

## CONCLUSION

For these reasons, this case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       March 29, 2022